**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **BECKY L. DEUTSCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:_________________________** |
| | ) | |
| **KEYS FISHERIES, INC., and** | ) | |
| **JOE'S STONE CRABS, INC.** | ) | |
| | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**COMPLAINT WITH DEMAND FOR JURY TRIAL**

**COMES NOW** Plaintiff, Becky L. Deutsch, (hereinafter "Plaintiff"), by and through her undersigned counsel, and hereby files this lawsuit against Defendants, Keys Fisheries, Inc. and Defendants Joe's Stone Crabs, Inc. (hereinafter collectively "Defendants" or "Employer"), and states as follows:

**JURISDICTION AND VENUE**

1. This is an action by Plaintiff for compensatory, liquidated, and punitive damages, declaratory, and injunctive relief under the Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*), as amended ("Title VII"), the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq.*, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01 *et seq.*, to redress injury caused by Defendants' discrimination motivated by her gender or, alternatively, because of her age, and in retaliation for lodging an internal complaint(s) of disparate treatment / age discrimination.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, Title VII, the ADEA and 28 U.S.C. § 1367. This Court has supplemental jurisdiction of the Florida Civil Rights Act Claims and any other state law claims pursuant to 28 U.S.C. § 1367. Declaratory, injunctive, legal and equitable relief is sought pursuant to the laws set forth above to include attorneys' fees, costs, and damages.

3. Defendants Keys Fisheries, Inc. ("Defendants KF" or "KF") employs at least twenty (20) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

4. Defendants Joe's Stone Crabs, Inc. ("Defendants JSC" or "JSC") employs at least twenty (20) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years. KF and JSC are referred to collectively herein as "Defendants."

5. Venue is proper in the Monroe Division of the Southern District of Florida (28 U.S.C. § 89(b)), because Defendants do business in Monroe County, and some or all of the acts alleged herein took place in Monroe County.

6. Defendants KF's principal place of business and primary office is in Monroe County (3502 Gulfview Avenue, Marathon, Florida 33050). Defendants JSC's principal place of business and primary office is in Dade County (11 Washington Avenue, Miami Beach, Florida 33139); however, on information and belief, it employed or acted as Plaintiff's employer or joint employer with Defendants KF when she worked in for Defendants in Monroe County.

7. Plaintiff currently resides in Big Pine Key, Florida.

8. All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

9. On or about April 20, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2020-03552. A true and correct copy of Plaintiff's charge is attached hereto as Exhibit "A".

10. On or about May 15, 2020, the EEOC issued a Notice of Right to Sue letter to Plaintiff and suit has been commenced within ninety (90) days of receipt of the letter, a true and correct copy of which is included in Exhibit "B".

## GENERAL FACTUAL ALLEGATIONS

11. Plaintiff is a female and is sixty (60) years old.

12. Plaintiff is a former employee, title of office manager, at its Marathon, Florida location.

13. Plaintiff was hired by Defendants in early November, 2019.

14. During the hiring process, Mr. Drew Kennelly (male, around fifty-six (56) years of age, one of Defendants' General Managers) and other managers of Defendants, informed Plaintiff that she would receive training on KF's "point-of-sale" software system.

15. Mr. Kennelly was Plaintiff's immediate supervisor.

16. Plaintiff informed Defendants' managers she had used other software systems for point-of-sale, but not the one Defendants' used and that it would probably take some time to learn.

17. During the hiring process, Mr. Kennelly and other managers of Defendants, knew that its "point-of-sale" software system was complex, including for new users.

18. Plaintiff did not receive the software training Defendants said she would.

19. Plaintiff attempted to learn the software on her own, on-the-job, including requesting software help from the software company online, often with difficulty getting through to someone to assist.

20. Other managers of Defendants, including Ms. Jennet Pruitt (around sixty (60) years of age, Retail Manager of Defendant), acknowledged to Plaintiff that the POS system "sucked" and it was common knowledge.

21. While at work, Kennelly called Plaintiff "sweetie."

22. While at work, Kennelly called Plaintiff "baby."

23. While at work, Kennelly called Plaintiff "honey."

24. While at work, Kennelly would wink at Plaintiff.

25. Plaintiff was an excellent employee, at least until her internal complaint of disparate treatment discrimination.

26. On January 11 or 12, 2020, Kennelly left a handwritten note on Plaintiff's desk, where he disciplined her for an error that allegedly occurred on Friday, January 10, 2020.

27. The alleged error concerned an order of seafood, also known as a "button," that needed to be processed over the weekend.

28. Part of Plaintiff's duties was to make sure the contents of orders, like buttons, were entered in the software.

29. About twenty minutes before leaving work on Friday, January 10, 2020, Plaintiff was asked to install a new button in the system, requiring Plaintiff to take several steps in the software.

30. The software required shutdown for an update before the button could be processed.

31. When she left work on Friday, Plaintiff went by the Retail Office in the fish market, to make sure the button was correct in the software, prior to leaving.

32. On January 10, 2020, Plaintiff confirmed with Ms. Pruitt that the button had been properly handled on Plaintiff's end, including telling Plaintiff "everything looks good" in the software.

33. In other words, before she left for the day on Friday, Plaintiff had ensured the button was correctly entered.

34. To the extent there was an error attributable to Plaintiff, which there was not, it did not cost Defendants any money, only a software correction.

35. Kennelly's note included the statements: "As I said this is the second time this has happened if it happens again, I will be sending a write up to H.R. I do not want you leaving on Friday until all of your work for the week is done and correct. [/s/] Andrew W. Kennelly JR, G.M.; Keys Fisheries Market and Marina Restaurant."

36. Plaintiff was upset by the note, including because she had done nothing wrong, the note contained incorrect information about her, and because she still had not received the training on the point-of-sale (POS) software.

37. That week, Plaintiff asked that Mr. Greg D'Agostino (male, around 48 years of age, Defendants' General Manager, Kennelly's supervisor) to discuss Kennelly's note.

38. Plaintiff handed Mr. D'Agostino the note from Kennelly.

39. Plaintiff complained that this discipline was unfair and seemed threatening.

40. D'Agostino laughed at Plaintiff, saying he did not think it was threatening.

41. Plaintiff stated that is how she felt, including because she had done nothing wrong.

42. D'Agostino said he would "take care" of talking to Kennelly about it.

43. Later that week, someone at the office told Plaintiff that there was a job opening for office manager, her position, on Facebook.

44. After learning of the posting, Plaintiff asked Kennelly about it, and he assured her that "they are always looking for people and not to worry about your job."

45. Plaintiff felt like Kennelly was lying.

46. After speaking to Kennelly, Plaintiff went to the owner's office, Mr. Gary Graves about the note and job posting.

47. Plaintiff asked Mr. Graves if this job posting was to replace her.

48. Mr. Graves responded, yes, Defendant was looking to replace Plaintiff.

49. Ms. Kristen l/n/u (female, around forty-five years of age, Human Resources Director onsite), was present during this meeting.

50. Plaintiff complained that she had issues with the software, but reminded him that she had yet to receive training promised at the time of her hire.

51. Mr. Graves asked Ms. Kristen about Plaintiff's performance and training, to which she responded, "we have some small issues with the software, but we have gotten through them and will be fine going forward."

52. Plaintiff was assured at this meeting that training was set up for her on the POS software in the coming days.

53. That week or the next, Defendants hired (name unknown) (male, around 50-years of age), to work with its office personnel.

54. On information and belief, this unknown, younger male replaced Plaintiff or replaced Plaintiff by taking over some or part of her former duties.

55. During a meeting with Ms. Kristen in January, Plaintiff complained to HR that she felt she was being treated less favorably than other employees in the terms and conditions of their employment.

56. During the meeting, Plaintiff complained to HR that she felt she was being treated less favorably in the terms and conditions of their employment, because of her age and that she was "older" than other managers that were being treated more favorably than her.

57. Kristen told Plaintiff that an investigation would be conducted into her complaint of discrimination.

58. Despite this assurance from HR, no investigation occurred.

59. On or about January 21, 2020, Plaintiff arrived to work with the understanding that she would be receiving the software training she was promised when hired.

60. Kristen and Graves told Plaintiff she would be receiving the training that day.

61. Instead, Plaintiff was called into a meeting with Kennelly, Kristen, Pruitt, and Ms. Aida Gorta (female around fifty-five (55) years of age, Floor Manager).

62. Kennelly told Plaintiff "this is nothing personal, but we don't feel that you are catching on at the job" and that Plaintiff was terminated.

63. Distraught and in disbelief, Plaintiff left room and the premises.

64. Other than the handwritten note from Kennelly, Plaintiff had not received any written discipline from Defendants.

65. To the extent Defendants or their agent-managers relied upon the handwritten note from Kennelly in connection with the termination decision, the note constitutes an adverse employment action leading to more formal or further discipline.

66. Plaintiff believes that other comparator managers who are male and/or younger, (including Pruitt, Plaintiff's replacement (e.g. younger male), and other as-of yet unknown comparators), made errors concerning buttons, including Pruitt's error on the January 10, 2020

button that Plaintiff was blamed for errantly and disparately, and did not receive discipline and/or discipline that led to more formal or further discipline.

67. Plaintiff believes that other comparator managers who are male and/or younger, (including Pruitt, Plaintiff's replacement, and other as-of yet unknown comparators), received training concerning software systems allowed them to avoid errors related to the software.

68. Plaintiff believes that other comparator managers who are male and/or younger, (including Pruitt, Plaintiff's replacement, and other as-of yet unknown comparators), did not receive discipline and/or discipline leading to termination even though Defendants' managers "felt they were not catching on at the job."

69. Plaintiff believes that other comparator managers who are male and/or younger, (including Pruitt, Plaintiff's replacement, and other as-of yet unknown comparators), were believed by Defendants to not be catching on at the job, but were allowed more than the time Plaintiff was allowed to learn on-the job.

70. Plaintiff believes that other comparator managers who are male and/or younger, (including Pruitt, Plaintiff's replacement, and other as-of yet unknown comparators), were not disciplined or terminated a week after complaining to HR, her supervisors and the owner about disparate treatment about age discrimination.

71. Plaintiff suffered disparate treatment because of her age, including in her discipline and termination. Alternatively, Plaintiff suffered disparate treatment in discipline and termination motivated by her gender.

72. Plaintiff suffered retaliation, being terminated mere days after she complained internally to Kristen, D'Agostino, and Mr. Graves of disparate treatment and/or age discrimination,

and there is a casual connection between her internal complaint of discrimination and her termination, including via temporal proximity.

73. Plaintiff suffered retaliation, failing to be provided with an investigation, whereas others outside her protected class that complained internally or externally had their complaints investigated and/or investigated in a manner and degree exceeding that of Defendants' investigation into her complaint.

74. Any purported legitimate reason, proffered by Defendants for their actions, is, in reality, a pretext for unlawful discrimination and/or retaliation, including because of Defendants and their agents, changing, shifting, or differing versions of its handling of the terms and conditions of Plaintiff's employment and the adverse actions against her.

75. The termination resulted in Plaintiff suffering physical and emotional distress, including lack of appetite and inability to sleep.

76. On information and belief, Plaintiff believes that males and persons younger than her, including her replacement, were paid more than Plaintiff for comparable work.

77. Plaintiff has sufficient evidence and/or will present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that her gender was factor or a motivating factor(s) for Defendants' discriminatory and retaliatory termination and failure to promote/transfer her, or, alternatively, that age was the but-for cause for Defendants' adverse actions against Plaintiff.

78. Defendants are or may be liable to Plaintiff under the "cat's paw" theory of vicarious liability and, to the extent necessary, alleges that it is so liable.

**Count I – Title VII Disparate Treatment (Gender) – Discipline & Termination**[1]

79. Plaintiff realleges all of the preceding paragraphs of this complaint.

80. Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII.

81. Plaintiff is a member of a protected class, female.

82. Plaintiff was qualified for her position.

83. Plaintiff suffered an adverse employment action(s), discipline without any warning on January 13, 2020, resulting (or ostensibly resulting) in further or more formal discipline on January 21, 2020, termination.

84. Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including those males named in the complaint, her replacement, and other comparator males presently unknown, were treated more favorably than her in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination) not resulting in termination of employment.

85. Defendants intended to discriminate and did discriminate on the basis of gender, and/or Plaintiff's protected characteristic, female, was a motivator or motivating factor in Defendants' treatment of Plaintiff when it terminated her employment.

86. Defendants' discrimination concerned one or more of the activities enumerated in Title VII.

87. As a result of the aforementioned conduct, Defendants violated Title VII.

---

[1] To the extent necessary, Plaintiff's claims herein are pled in the alternative.

88. Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendants is, in reality, a pretext for unlawful discriminatory treatment.

89. As a direct and proximate result of Defendants' conduct, Plaintiff suffered an adverse employment action by being disciplined and terminated, and was damaged.

90. Defendants have failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

91. Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of disparate treatment based on her gender and/or that the violations of her rights were continuing in nature by Defendants.

92. As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

**Count II – FCRA Disparate Treatment (Gender) – Discipline / Termination**

93. Plaintiff realleges and incorporates paragraphs 1-78 as if fully set forth herein.

94. Plaintiff has completed all necessary pre-requisites to bringing her claims under the FCRA.

95. Plaintiff is a member of a protected class, female.

96. Plaintiff was qualified for her position.

97. Plaintiff suffered an adverse employment action(s), discipline without any warning on January 13, 2020, resulting (or ostensibly resulting) in further or more formal discipline on January 21, 2020, termination.

98. Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including those males named in the complaint, her replacement, and other comparator males presently unknown, were treated more favorably than her in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination) not resulting in termination of employment.

99. Defendants intended to discriminate and did discriminate on the basis of gender, and/or Plaintiff's protected characteristic, female, was a motivator or motivating factor in Defendants' treatment of Plaintiff when it terminated her employment.

100. Defendants' discrimination concerned one or more of the activities enumerated in the FCRA.

101. As a result of the aforementioned conduct, Defendants violated the FCRA.

102. Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendants is, in reality, a pretext for unlawful discriminatory treatment.

103. As a direct and proximate result of Defendants' conduct, Plaintiff suffered an adverse employment action by being disciplined and terminated, and was damaged.

104. Defendants has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

105. Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of disparate treatment based on her gender and/or that the violations of her rights were continuing in nature by Defendants.

106. As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

**Count III – ADEA Disparate Treatment – Discipline & Termination**

107. Plaintiff realleges and incorporates paragraphs 1-78 as if fully set forth herein.

108. Plaintiff has completed all necessary pre-requisites to bringing her claims under the ADEA.

109. At all relevant times, Defendants has been, and continues to be, an employer within the meaning of the ADEA, 29 U.S.C. § 630(b).

110. Plaintiff, who was qualified for her position, is a member of the protected group between the age of forty and seventy.

111. Plaintiff suffered an adverse employment action(s), discipline without any warning on January 13, 2020, resulting in her termination the next week, whereas younger persons were not disciplined and terminated.

112. Plaintiff was replaced by a person(s) younger than her; and/or similarly situated comparator employees, including those younger employees named in the complaint, her replacement, and other comparator persons presently unknown, were treated more favorably than her in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, improper transfer of funds) not resulting in termination of employment.

113. Defendants intended to discriminate and did discriminate on the basis of age, and it was the "but-for" cause of her treatment by Defendants.

114. Defendants' discrimination concerned one or more of the activities enumerated in the ADEA.

115. As a result of the aforementioned conduct, Defendants violated the ADEA.

116. Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendants is, in reality, a pretext for unlawful discriminatory treatment.

117. As a direct and proximate result of Defendants' conduct, Plaintiff suffered an adverse employment action by being disciplined and terminated, and was damaged.

118. Defendants has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

119. Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of disparate treatment based on her age and/or that the violations of her rights were continuing in nature by Defendants.

120. As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, liquidated damages, and attorneys' fees and costs.

**Count IV – FCRA (Age) Disparate Treatment – Discipline & Termination**

121. Plaintiff realleges and incorporates paragraphs 1-78 as if fully set forth herein.

122. Plaintiff has completed all necessary pre-requisites to bringing her claims under the ADEA.

123. At all relevant times, Defendants has been, and continues to be, an employer within the meaning of the FCRA.

124. Plaintiff, who was qualified for her position, is a member of the protected group between the age of forty (40) and seventy (70).

125. Plaintiff suffered an adverse employment action(s), discipline without any warning on January 13, 2020, resulting in her termination the next week, whereas younger persons were not disciplined and terminated.

126. Plaintiff was replaced by a person(s) younger than her; and/or similarly situated comparator employees, including those younger employees named in the complaint, her replacement, and other comparator persons presently unknown, were treated more favorably than her in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, improper transfer of funds) not resulting in termination of employment.

127. Defendants intended to discriminate and did discriminate on the basis of age, and it was the "but-for" cause of her treatment by Defendants.

128. Defendants' discrimination concerned one or more of the activities enumerated in the FCRA.

129. As a result of the aforementioned conduct, Defendants violated the FCRA.

130. Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendants is, in reality, a pretext for unlawful discriminatory treatment.

131. As a direct and proximate result of Defendants' conduct, Plaintiff suffered an adverse employment action by being disciplined and terminated, and was damaged.

132. Defendants has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

133. Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of disparate treatment based on her age and/or that the violations of her rights were continuing in nature by Defendants.

134. As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, liquidated damages, and attorneys' fees and costs.

**Count V – Title VII Retaliation**

135. Plaintiff realleges and incorporates paragraphs 1-78 as if fully set forth herein.

136. Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII.

137. Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, disparate, non-investigated, and inconsistent discipline in January 2020 through her termination, being paid less than male employees (including her replacement), by not starting an investigation into her complaint about discrimination to HR, and by being terminated for a reasons others were not terminated for (or receiving less discipline for similar errors).

138. Plaintiff engaged in a statutorily protected activities, complaining to HR, her supervisors and the owner about disparate treatment about age discrimination during the week of January 13, 2020, only to not have an investigation started (or completed) as promised and to be terminated the next week, to be replaced by a male employee.

139. Defendants damaged and retaliated against Plaintiff in the terms and conditions of her employment, by disciplining her unfairly, unjustly, inaccurately, and inconsistently after she complained to HR, by not conducting an investigation (on information and belief, paying her less than comparators), and by terminating her employment.

140. There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment in pay and discipline and her termination.

141. Any purported legitimate reason for the adverse actions by Defendants is, in reality, a pretext for its unlawful retaliation.

142. As a result of the aforementioned conduct, Defendants violated Title VII.

143. As a direct and proximate result of Defendants' conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in her suffering injury and being damaged.

144. Defendants has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

145. Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of retaliation and/or that the violations of her rights were continuing in nature by Defendants.

146. As a direct and proximate result of Defendants' willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

**Count VI – ADEA Retaliation**

147. Plaintiff realleges and incorporates paragraphs 1-69 as if fully set forth herein.

148. Plaintiff has completed all necessary pre-requisites to bringing her claims under the ADEA.

149. Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, disparate, non-investigated, and inconsistent discipline in January 2020 through her termination, being paid less than male employees (including her replacement), by not starting an investigation into her complaint about discrimination to HR, and by being terminated for a reasons others were not terminated for (or receiving less discipline for similar errors).

150. Plaintiff engaged in a statutorily protected activities, complaining to HR, her supervisors and the owner about disparate treatment about age discrimination during the week of January 13, 2020, only to not have an investigation started (or completed) as promised and to be terminated the next week, to be replaced by a male employee.

151. Defendants damaged and retaliated against Plaintiff in the terms and conditions of her employment, by disciplining her unfairly, unjustly, inaccurately, and inconsistently after she complained to HR, by not conducting an investigation (on information and belief, paying her less than comparators), and by terminating her employment.

152. There is or are a casual connection(s) between Plaintiff's complaints of age discrimination and her termination.

153. Any purported legitimate reason for the adverse actions by Defendants is, in reality, a pretext for its unlawful retaliation.

154. As a result of the aforementioned conduct, Defendants violated the ADEA.

155. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in her suffering injury and being damaged.

156. Defendants have failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

157. Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of retaliation and/or that the violations of her rights were continuing in nature by Defendants.

158. As a direct and proximate result of Defendants' willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, liquidated damages, and attorneys' fees and costs.

**Count XXI – FCRA Retaliation**

159. Plaintiff realleges and incorporates paragraphs 1-78 as if fully set forth herein.

160. Plaintiff has completed all necessary pre-requisites to bringing her claims under the FCRA.

161. Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, disparate, non-investigated, and inconsistent discipline in January 2020 through her termination, being paid less than male employees (including her replacement), by not starting an investigation into her complaint about discrimination to HR, and by being terminated for a reasons others were not terminated for (or receiving less discipline for similar errors).

162. Plaintiff engaged in a statutorily protected activities, complaining to HR, her supervisors and the owner about disparate treatment about age discrimination during the week of January 13, 2020, only to not have an investigation started (or completed) as promised and to be terminated the next week, to be replaced by a male employee.

163. Defendants damaged and retaliated against Plaintiff in the terms and conditions of her employment, by disciplining her unfairly, unjustly, inaccurately, and inconsistently after she

complained to HR, by not conducting an investigation (on information and belief, paying her less than comparators), and by terminating her employment.

164. There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment in pay and discipline and her termination.

165. Any purported legitimate reason for the adverse actions by Defendants is, in reality, a pretext for its unlawful retaliation.

166. As a result of the aforementioned conduct, Defendants violated the FCRA.

167. As a direct and proximate result of Defendants' conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in her suffering injury and being damaged.

168. Defendants have failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

169. Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendants engaged in a pattern and practice of retaliation and/or that the violations of her rights were continuing in nature by Defendants.

170. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

171. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Grant a permanent injunction enjoining Defendants its officers, successors, assigns and all persons in active concert or participation with it, from engaging in discriminatory and retaliatory practices in violation of the law, as well as appropriately fashioned equitable relief aimed at preventing future discrimination and retaliation;

(b) Award Plaintiff judgment against Defendants for compensatory and/or liquidated damages as determined by the trier of fact;

(c) Award Plaintiff all restitution and other damages, including pre- and post-judgment interest, for the benefits she would have received absent the retaliatory treatment;

(d) Enter judgment for liquidated and/or punitive damages against Defendants, and

(e) Award all reasonable attorneys' fees and costs incurred in connection with this action; and any other further relief as justice may require.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 14th day of August, 2020.

//s//Michael G. Green II, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: michael@jpsalaslaw.com
Fla. Bar. No. 60859

//s//John P. Salas, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Email: jp@jpsalaslaw.com
Fla. Bar. No. 87593